UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GUFFEY,<br><br>          Petitioner,<br><br>vs.<br><br>RICHARD SUBIA, Warden, et al.,<br><br>          Respondent. | **CASE NO: 07-CV-1620-IEG (CAB)**<br><br>**ORDER:**<br><br>**(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT (Doc. No. 32);**<br><br>**(2) REJECTING THE PETITIONER'S OBJECTIONS (Doc. No. 38);**<br><br>**(3) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1); and**<br><br>**(4) DENYING CERTIFICATE OF APPEALABILITY.** |

     Daniel Guffey (hereinafter "Petitioner"), is a state prisoner proceeding *pro se* with a Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Doc. No. 1.)   This matter was referred to United States Magistrate Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Bencivengo issued a Report

and Recommendation ("Report") recommending the Court deny the petition. (Doc. No. 32.) Petitioner filed objections to the Report. (Doc. No. 127.)

Following *de novo* review of petitioner's claims, the Court finds the Report to be thorough, complete, and an accurate analysis of the legal issues presented in the petition. For the reasons explained below, the Court: (1) adopts the Report in full; (2) rejects Petitioner's objections; (3) denies the petition for writ of habeas corpus; and (4) denies a certificate of appealability.

## BACKGROUND

### I.  Factual Background

The Report contains an accurate recital of the facts as determined by the California Court of Appeal, and the Court fully adopts the Report's statement of facts. As the magistrate judge correctly noted, the Court presumes state court findings of fact to be correct.

The following facts as drawn from the Report are relevant to evaluate the petition. Petitioner previously had a romantic relationship with Kathleen Dockler. Dockler ended the relationship, and began an intimate relationship with Rawson, a close friend of Petitioner's. Petitioner was very upset about the breakup and began stalking Dockler. On December 24, he confronted Dockler and threatened to kill Rawson and his family. Petitioner also told Dockler's friend, Linda Drake, that he was going to "take (Rawson) out" and that Rawson was not "going to be a problem anymore." On approximately December 29, Petitioner asked his friend, Bruce Phifer to beat Rawson up. Phifer declined, but said that he would mention it to Jesse Gehrke, who worked for his drywall business. Petitioner had several other encounters with Dockler and Rawson that day, which led them to decide they needed to get a restraining order against Petitioner.

On December 25, Phifer wrote down Petitioner's phone number and gave it to Gehrke. In the early morning hours of January 1, 2002, Petitioner e-mailed Dockler a love poem that said in part, "by the time that you read this, it will have all come undone." That night, Petitioner told a friend, Amber Stanley, that he felt Rawson had betrayed him and asked whether she knew anyone who would help set Rawson up to be the victim of a hit-and-run. Close family friend Jeremiah Beamer later joined Petitioner and Stanley for part of the morning; he thought

Petitioner appeared angry and that his demeanor was "weird." At approximately 4 a.m. on January 2, 2002, Petitioner called Phifer, upset and saying that something bad had happened.

Meanwhile, on the evening of January 1, 2002, Gehrke and Christopher Bo Smith met up with Kyla Stark. The three arrived in La Mesa sometime before 9 a.m. the next morning. Later that morning, Stark, Gehrke and Smith went to the Rawsons' house, and Rawson invited them inside. In the same time frame (sometime between 11 and 11:15 a.m.), a woman who was working nearby saw Petitioner's van, which was distinctive because it had the logo and phone number of his locksmith business on the side, driving very slowly down the street in front of the Rawsons' house. While inside the house, Gehrke used Rawson's phone to call Petitioner's cell phone. Stark later saw Gehrke and Smith stab Rawson repeatedly and saw Smith slit his throat.

In the meantime, after leaving the Rawsons' neighborhood, Petitioner drove to Mission Valley to pick up Stanley. While he was in the parking lot of the hotel where Stanley was staying, he received Gehrke's call from the Rawson's home phone. Stanley noticed that Petitioner was wearing the same clothes as he had on the prior night, but was "really agitated" and appeared to have injuries on his hands. Petitioner told Stanley that he had slapped Rawson around and "got[ten] [Rawson] good."

Police arrested Petitioner that evening. Two days after the murder, Gehrke and Smith showed up at Phifer's motel room, saying that they needed to leave town. Smith told Phifer that they had "offed" Rawson and "I sent it on home with the old timer," a brand of pocketknife that he owned. On January 20, 2002, Smith bragged to a friend that he had slit someone's throat. Shortly thereafter, the police arrested Gehrke and Smith for parole violations, but did not charge them with the murder. The officers found Petitioner's cell phone number written on a scrap of paper in Gehrke's wallet. The police also arrested Stark.

In June 2002, Petitioner talked to the prosecutor and a detective in a confidential interview. Four months later, the district attorney charged Gehrke, Smith and Petitioner with one count each of conspiracy to assault and murder.

## II.     State Procedural Background

The Report contains a complete and accurate summary of the state court proceedings, and the Court fully adopts the Report's statement of state procedural background. In sum, a jury

found Petitioner guilty of second degree murder and conspiracy to commit assault. (CT 527-28.) The same jury found co-defendants Gehrke and Smith guilty of first degree murder and conspiracy to commit assault, and returned true findings that they personally used a knife during the commission of the offenses. (CT 330-31, 621-22.)  On September 18, 2003, Petitioner was sentenced to a state prison term of 15 years-to-life. (CT 564.)

The appellate court consolidated Petitioner's appeal with that of his two co-defendants, and affirmed the convictions in an unpublished opinion. (Lodgment No. 6, People v. Gehrke, et al., D042984, slip op. (Cal. Ct. App. Jan. 31, 2006).)  The state supreme court consolidated Petitioner's petition for review with that of his co-defendants, and denied the petition by an order which stated in full: "Petitions for review DENIED." (Lodgment No. 8.)

### III.  Federal Procedural Background

On August 15, 2007, Petitioner filed a Petition for Writ of Habeas Corpus challenging his San Diego County Superior Court convictions.  Respondent filed an Answer to the Petition, and lodged portions of the state court record. (Doc. No. 25.)  Petitioner filed a Traverse with an attached Notice of Lodgment. (Doc. No. 29.)

On August 28, 2009, Magistrate Judge Cathy Ann Bencivengo issued a Report recommending the petition be denied.  (Doc. No 32.)  After being granted two extensions of time, Petitioner filed objections to the Report on January 13, 2010.  (Doc. No. 38.)  In his objections, Petitioner argues that the magistrate judge erred in finding that the state court did not make an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence.  Petitioner also requests an evidentiary hearing.  Because Petitioner has objected to the Report in its entirety, the Court reviews the Report *de novo*.  28 U.S.C. § 636(b)(1)(C); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004).

## DISCUSSION

### I.  Legal Standard

The Report sets forth the correct standard of review for a petition for writ of habeas corpus .  Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403, 412-13 (2000). Under § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law if the state court (1) "arrives at a conclusion opposite to that reached by this Court on a question of law" or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Williams, 529 U.S. at 405. A state court's decision is an "unreasonable application" if the application was "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).

Under § 2254(d)(2), habeas relief is not available due to a state court's "unreasonable determination of the facts" unless the underlying factual determinations were objectively unreasonable. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable).

## II. Petitioner's Request for an Evidentiary Hearing

In his objections, Petitioner requests an evidentiary hearing. Section 2254(e) "substantially restricts the district court's discretion to grant an evidentiary hearing." Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999). Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

      (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

      (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In his objections, Petitioner does not contend that he developed the factual basis of the claim in state court or requested an evidentiary hearing in state court. See Williams, 529 U.S. at 437 ("Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."). Regardless, a hearing would not be appropriate because Petitioner fails to explain how his claims would be advanced by a hearing. Petitioner appears to argue that a hearing is warranted because the Report is based solely on the facts set forth in the appellate court opinion. However, the magistrate judge correctly deferred to the state court findings of fact. 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct" and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."). Petitioner does not challenge the accuracy of any particular facts as set forth by the appellate court or explain what facts he would seek to develop at a hearing.

      Petitioner also appears to argue that a hearing is warranted because the state courts and magistrate judge did not consider the transcript of his "free talk" confidential interview with the prosecutor. Petitioner does not explain why this warrants a hearing. Petitioner has already attached the "free talk" transcript to his Traverse. (Traverse, Not. of Lodgment.) In any event, it is unclear how consideration of the transcript would advance his claims. Petitioner vaguely states that it "sheds light in favor of petitioner and his valid claim of innocence of murder." (Objections at 5:14-15.) This is unlikely considering Petitioner's counsel argued vigorously at trial that the "free talk" transcript should not be turned over to Petitioner's co-defendants because it "would bring out things that my client would hope to be secret" and the co-defendants "will bring out things [from the 'free talk'] which will hurt my client." (Pet. at 14.)

      The Court therefore denies Petitioner's request for an evidentiary hearing.

//

//

### III. Analysis of Petitioner's Claims

Petitioner raises three claims in his Petition for Writ of Habeas Corpus: (1) Petitioner's Fourteenth Amendment right to due process was violated because the evidence was insufficient to support a finding that the murder was the natural and probable consequence of simple assault (Pet. at 6); (2) Petitioner's Fourteenth Amendment right to due process was violated by the failure to sever his trial from the trial of his co-defendants (Pet. at 7); and (3) Petitioner's right to confront and cross-examine witnesses under the Sixth and Fourteenth Amendments was violated by the admission of co-defendant Smith's extrajudicial statements (Pet. at 8).

#### A. Claim One: Sufficiency of the Evidence

Petitioner claims his Fourteenth Amendment right to due process was violated because the evidence was insufficient to support a finding that the murder was the natural and probable consequence of simple assault. (Pet. at 6.) Because the state supreme court summarily denied Petitioner's habeas corpus petition, the magistrate judge correctly "looked through" to the underlying appellate court decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).

The magistrate judge correctly identified Jackson v. Virginia, 443 U.S. 307, 319 (1979), as setting forth the clearly established federal law regarding sufficiency of the evidence claims in the criminal context. Under Jackson, "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. Evidence is sufficient as long as any rational trier of fact could have been persuaded of the defendant's guilt, viewing the result in the light most favorable to the judgment and drawing all reasonable inferences from the evidence which support the jury's verdict. Id. at 319. In his objections, Petitioner argues that the magistrate judge erred in citing to state law in addressing his sufficiency of the evidence claim. However, Jackson instructs federal habeas courts to analyze these claims "with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.

The magistrate judge correctly identifies the controlling state law. "The determination of whether one criminal act was a natural and probable consequence of another criminal act is generally a factual question to be resolved by the jury in light of all the circumstances." People

v. Nguyen, 21 Cal. App. 4th 518, 531 (1993). "The test to be applied is an objective one: '. . . whether, under all the circumstances presented, a reasonable person in the [actor]'s position would have or should have known that the charged offense was a reasonably foreseeable consequence' of the target offense." Id.

In his objections, Petitioner argues that, as a matter of law, murder cannot be a natural and probable consequence of a conspiracy to commit simple assault. The case law establishes otherwise. See People v. Prettyman, 58 Cal. Rptr. 2d 827 (Ct. App. 1996) ("Murder . . . is *not* the 'natural and probable consequence' of 'trivial' activities."); People v. Montes, 74 Cal. App. 4th 1050, 1054-56 (Ct. App. 1999) (finding that "[u]nder the circumstances . . . , the targeted offenses of simple assault and breach of the peace for fighting in public were not trivial"). But see People v. Hickles, 56 Cal. App. 4th 1183, 1197 (1997). The Court also rejects Petitioner's argument that murder was not a natural and probable consequence of the conspiracy because there was no evidence that Petitioner knew Gehrke and Smith were armed or that they were likely to use weapons or force. See Montes, 74 Cal. App. 4th at 1056 (rejecting the argument that to be guilty of aiding and abetting, one must know of and encourage the perpetrator's intended use of a weapon); People v. Godinez, 2 Cal. App. 4th 492, 501 n.5 (Ct. App. 1992) (same).

The magistrate judge properly concluded that sufficient evidence exists to support a finding that the victim's murder was a natural and probable consequence of the conspiracy engineered by Petitioner to assault the victim:

> The jury was presented with evidence from which they could reasonably conclude that the death of the victim was a foreseeable consequence of the attack Petitioner commissioned on the victim. Kathleen Dockler, Petitioner's ex-girlfriend, began a romantic relationship with the victim while still living with Petitioner, and testified that after Petitioner found out about the relationship he twice threatened to kill the victim, and that the victim was killed several days after he made the threats. (Lodgment No. 1 Reporter's Tr. ["RT"] at 169-84.) Although Petitioner contends that he only asked Phifer to scare or beat up the victim, the jury was presented with evidence that after Phifer indicated that he was not interested in getting involved in a domestic situation, Gehrke immediately indicated that he was interested, and the victim was killed two days after Phifer gave Gehrke Petitioner's telephone number and told Gehrke to give Petitioner a call. (RT 531-37.) After the murder, Gehrke told Phifer that they had done what Petitioner had wanted them to do, which was to stab the victim. (RT 537-38.) This evidence,

coupled with the state court's finding that Petitioner solicited Gehrke to join the conspiracy knowing that Gehrke had previously been involved in a scuffle in which someone was stabbed, provides sufficient evidence for the jury to find that Petitioner commissioned Gehrke to assault and possibly stab the victim, and that murder was a natural and probable consequence of the target crime. Petitioner was also linked to the conspiracy by evidence that he was seen in the victim's neighborhood around the time of the killing, that he received a telephone call at or around the time of the killing, and that he was aware that Gehrke, Smith and Stark were inside the victim's house about to attack the victim. It was objectively reasonable for the state court to find that a reasonable person in Petitioner's position knew or should have known that the victim may have been killed as a result of the type of target crime perpetrated here.

(Report at 12:3-13:4.)  In his objections, Petitioner argues that the Court must assess the constitutionality of allowing conviction for murder as the natural and probable cause of simple assault, and assess whether jury instructions to that effect reduce the prosecution's burden of proof.  However, as discussed above, the magistrate judge correctly analyzed this claim with reference to the substantive elements of the criminal offense as defined by state law, as required by Jackson.  See 443 U.S. at 324 n.16.

Accordingly, the Court rejects Petitioner's objections, adopts the Report, and denies the petition as to this claim.

**B.    Claim Two: Failure to Sever Trial**

Petitioner claims that his Fourteenth Amendment right to due process was violated by the failure to sever his trial from the trial of his co-defendants.[1] (Pet. at 7.)  Petitioner raises two issues: his defense was mutually antagonistic with his co-defendants' defenses, and his right to testify in his own behalf was circumscribed by the holding of the trial judge that the transcript of the "free talk" confidential interview with the prosecutor would be turned over to the other defendants if he testified.  Petitioner objects to the magistrate judge's rejection of both of these arguments.

---

[1]  In his objections, Petitioner raises the related argument that he was "forced to have his first appellate review as of right combined with the co-defendants."  Petitioner points to no authority prohibiting the appellate court from consolidating Petitioner's appeal with that of his two co-defendants.

### a.   Failure to sever

Petitioner contends his defense was mutually antagonistic with his co-defendants' defenses, and therefore the state court should have granted his motion to sever the trial. Because the state supreme court summarily denied Petitioner's habeas corpus petition, the magistrate judge correctly "looked through" to the underlying appellate court decision.

The magistrate judge correctly identifies Zafiro v. United States, 506 U.S. 534 (1993) as setting forth the clearly established federal law on this subject. There is a strong preference in the federal system for joint trials of defendants who are indicted together. Id. at 537. A court should grant severance under Rule 14 of the Federal Rule of Criminal Procedure "only if a serious risk exists that a joint trial would compromise a particular trial right of a properly joined defendant or prevent the jury from reliably determining guilt or innocence." Id. at 539. In Zafiro, the Court declined to adopt a bright line rule that mutually antagonistic defenses are per se prejudicial. Id. at 534. "[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. at 539.

The magistrate judge correctly concluded that that the majority of the defenses were not antagonistic. Gehrke and Smith's defense was that they did not commit the crimes. Smith argued that he did not fit the description of the men seen in the neighborhood on the morning of the murder, and Gehrke presented alibi evidence. Petitioner denied he solicited the assault, and presented the additional defense that someone other than himself had solicited the assault. Gehrke and Smith's defense that they did not commit the crimes was not antagonistic because it actually bolstered Petitioner's defense that he did not solicit them to commit the crimes. Because a jury could accept Smith and Gehrke's defense that they did not commit the crimes, and also accept Petitioner's defense that he did not solicit them to commit the crimes, failure to sever did not create a serious risk of compromising a particular trial right or prevent the jury from reliably determining guilt or innocence. While Gehrke and Smith also presented evidence and argument suggesting Petitoner was the killer, the magistrate judge and appellate court correctly noted that Petitioner does not explain why this evidence would not have been admissible in a separate trial against him if the prosecution had decided to pursue a similar theory.

Accordingly, the Court rejects Petitioner's objections, adopts the Report, and denies the petition as to this part of Petitioner's second claim.

### b. Right to testify

Petitioner argues that the state court's failure to sever his trial circumscribed his right to testify on his own behalf. At trial, Petitioner chose not to testify due to the trial judge's determination that, for impeachment purposes, the transcript of Petitioner's confidential "free talk" interview with the prosecutor must be turned over to his co-defendants if he testified.[2] Petitioner contends that if the "free talk" transcript would not have been turned over, he would have given testimony about Rawson owing money to Phifer, which would tend to show Phifer was the one involved in the conspiracy. (Pet. at 12.)

The magistrate judge accurately described the issue involving the "free talk" interview as follows:

> The agreement reached between Petitioner, his counsel and the deputy District Attorney stated that the government as well as the other defendants could use any inconsistent statements made during the free talk to impeach Petitioner if he testified. (Lodgment No. 1, Reporter's Tr. ["RT"] at 1587-88.) Petitioner's counsel argued extensively at trial that the free talk should not be turned over to the other defendants if Petitioner testified. Counsel argued there was information in the free talk which had not yet come out at trial which was damaging to Petitioner, including information about events of which the other defendants were not aware, and such information would not constitute impeachment because Petitioner would not testify as to those events. (RT 1589-90.)

(Report at 17:1-9.) The appellate court denied Petitioner's claim, stating that "it was not the joint trial, but instead the interview, that created the situation of which Petitioner now complains." (Lodgment No. 6, People v. Gehrke, et al., D042984, slip op. at 42.)

The magistrate judge correctly concluded that Petitioner has identified no clearly established federal law protecting him from being cross-examined with prior inconsistent out-of-court statements which were freely given, such as the "free talk" here, or in protecting such statements from discovery.

---

[2] Both the trial and appellate courts found that the "free talk" contained no material required to be turned over to the defense under Brady v. Maryland, 373 U.S. 83 (1963), or any information which would have assisted the other defendants in defending the charges against them. (Lodgment No. 6, People v. Gehrke, et al., D042984, slip op. at 19-20.)

Petitioner objects on the ground that failure to sever denied Petitioner's attorney the ability to deliver the "constitutionally minimum level of representation under the Sixth Amendment," because the defense's strategy was that Petitioner could testify without fear of the "free talk" being released. (Objections at 12:21-26.) This objection fails. Petitioner does not argue that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." See Strickland v. Washington, 466 U.S. 668, 687 (1984).

Petitioner also objects on the ground that the prosecution breached its agreement regarding the "free talk." (Objections at 12:27-13:1-4.) However, a habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Petitioner does not explain how the prosecution breached its agreement. The agreement stated that the prosecution would not use anything in the transcript except as impeachment. (Pet. at 12.) The trial court made the determination, upon the co-defendants' request, that the transcript must be turned over because the co-defendants also had the right to impeach Petitioner. (Pet. at 12.)

Accordingly, the Court rejects Petitioner's objections, adopts the Report, and denies the petition as to this part of Petitioner's second claim.

**C.     Admission of Co-Defendant's Extrajudicial Statements**

Petitioner argues that his right to confront and cross-examine witnesses under the Sixth and Fourteenth Amendments was violated by the admission of co-defendant Smith's extrajudicial statements as adoptive admissions by Gehrke. (Pet. at 8.) Phifer testified at trial that after the killing, Smith said "we offed him man" and "I sent it on home with the old timer," referring to a knife Smith had which he called the "old timer." (Lodgment No. 8 at 28; Lodgment No. 7 at 16-18; Lodgment No. 3 at 18-25.) Prior to trial, Gehrke moved to sever his trial because of Smith's statements. On appeal, Petitioner joined in Gehrke's claim that admission of the statements constituted Bruton/Aranda error. The magistrate judge correctly looked through the silent denial of this claim by the state supreme court to the appellate court opinion.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford v. Washington, 541 U.S. 36, 42 (2004). The magistrate judge correctly concluded that the appellate court's decision that introduction of Smith's admission did not violate the Confrontation Clause was neither contrary to nor involved an unreasonable application of Bruton v. United States, 391 U.S. 123 (1968). The Supreme Court in Bruton specifically declined to address the issue of whether admission of a co-defendant's statement which satisfied an exception to the hearsay rule, such as the adoptive admission exception here, would violate the Confrontation Clause. Id. at 128 n.3 ("There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause.").

The magistrate judge also correctly concluded that the appellate court's decision was neither contrary to nor involved an unreasonable application of Crawford, 541 U.S. 36. In Crawford, the Supreme Court stated that the introduction of prior testimonial statements of a witness violates a defendant's confrontation rights unless the person who made the statements is unavailable to testify and there was a prior opportunity for cross-examination. Id. at 68. The Court in Crawford, however, did not decide whether the Confrontation Clause has any application to nontestimonial statements, such as Smith's statements to Phifer. Id. ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . . Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.")

Finally, the magistrate judge correctly concluded that, to the extent the Supreme Court case of White v. Illinois survives Crawford, the appellate court's finding was neither contrary to nor involved an unreasonable application of White because Smith's statement fell within the firmly established hearsay exception for adoptive admissions and was made under conditions which render it reliable. See 502 U.S. 346, 355-56 (1992) (holding that out-of-court statements by a four-year old girl who did not testify and was not unavailable were admissible under the

13

"spontaneous exclamation" and "statements made for medical treatment' exceptions to the hearsay rule, and did not violate the Confrontation Clause). Faulty recollection is unlikely because Smith made the statements only two days after the killing; there is no apparent reason why Smith would want to wrongfully implicate Gehrke and Petitioner; and furthermore, the statements were against Smith's own penal interest.

In any event, the magistrate judge correctly concluded any error would be harmless. In a § 2254 habeas case the inquiry is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993); Fry v. Pliler, 551 U.S. 112, 122 (2007) (holding that the Brecht standard applies in § 2254 proceedings). This standard applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman." Id. The judge asks directly, "Do I, the judge, think that the error substantially influenced the jury's decision?" O'Neal v. McAninch, 513 U.S. 432, 437 (1995). "[W]hen a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." Id. at 445. The magistrate judge correctly found that Smith's statements were cumulative to Stark's testimony, other evidence that Smith and Gehrke killed the victim, and evidence of Petitioner's actions before and after the killing, and therefore, the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict."

In his objections, Petitioner argues that Confrontation Clause violations are structural errors that cannot be held harmless. This argument fails because the Supreme Court has held that "denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." Delaware v. Van Arsdall, 475 U.S. 673, 682 (1986).

Accordingly, the Court rejects Petitioner's objections, adopts the Report, and denies the petition as to this claim.

## CERTIFICATE OF APPEALABILITY

A petitioner complaining of detention arising from state court proceedings must obtain a certificate of appealability to file an appeal of the final order in a federal habeas proceeding. 28

U.S.C. § 2253(c)(1)(A) (2007).  The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2).  To make a "substantial showing," the petitioner must "demonstrat[e] that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable[.]'"  Beaty v. Stewart, 303 F.3d 975, 984 (9th Cir. 2002) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  Petitioner has not made a "substantial showing" as to any of the claims raised by his petition, and thus the Court *sua sponte* denies a certificate of appealability.

## CONCLUSION

In sum, Petitioner has not established that the appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state courts.  The Court hereby: (1) adopts the Report in full; (2) rejects the petitioner's objections; (3) denies the petition for writ of habeas corpus; and (4) denies a certificate of appealability.

**IT IS SO ORDERED.**

**DATED: March 17, 2010.**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**